1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4    Pro Se Party Cynthia Foss,    )
                   Plaintiff,      )
5                                  )
                                   )
6    vs.                           )   Case No. 18cv40011-TSH
                                   )   Case No. 18cv40122-TSH
7                                  )   Case No. 18cv40125-TSH
     Spencer Brewery, et al.,      )
8                  Defendants.     )

9

10   BEFORE:  The Honorable Timothy S. Hillman

11

12                         Motion Hearing

13

14

15                            United States District Court
                              Courtroom No. 2
16                            595 Main Street
                              Worcester, Massachusetts
17                            October 26, 2018

18

19

20

21

22

23                  Marianne Kusa-Ryll, RDR, CRR
                       Official Court Reporter
                     United States District Court
24                   595 Main Street, Room 514A
                       Worcester, MA 01608-2093
25                 508-929-3399 justicehill@aol.com
                  Mechanical Steno - Transcript by Computer

1    APPEARANCES:

2    Cynthia Foss
     9 Ansonia Road, #B
3    Worcester, Massachusetts 01605
     Pro se Plaintiff

4
     Mirick, O'Connell, DeMallie & Lougee, LLP
5    Thomas J. Conte, Esquire
     Alexandra N. Mansfield, Esquire
6    100 Front Street
     Worcester, Massachusetts 01608-1477
7    on behalf of the Defendants, Spencer Brewery, St. Joseph's
     Abbey, Spencer Brewery, LLC
8
     Bulkley, Richardson & Gelinas, LLP
9    James C. Duda, Esquire
     Lauren C. Ostberg, Esquire
10   1500 Main Street, Suite 2700
     Springfield, Massachusetts 01115-5507
11   On behalf of the Defendants, Big Eastern Exposition and Cup of
     Julie Show

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
 1                      P R O C E E D I N G S

 2              (The following proceedings were held in open court

 3      before the Honorable Timothy S. Hillman, United States District

 4      Judge, United States District Court, District of Massachusetts,

 5      at the Donohue Federal Building & United States Courthouse,

 6      595 Main Street, Worcester, Massachusetts, on October 26,

 7      2018.)

 8                      THE CLERK:  All rise.

 9                      Court is now open.  You may be seated.

10:16:48AM 10           Case No. 18-40011, Foss versus Spencer Brewery; Case

11      No. 18-40125, Foss versus Spencer Brewery; and Case No.

12      18-40122, Foss versus Spencer Brewery.

13                      Plaintiff and counsel, please note your appearance for

14      the record.

10:17:08AM 15           THE PLAINTIFF:  Hi.  My name is Cynthia Foss.

16                      THE COURT:  Good morning, Ms. Foss.

17                      THE PLAINTIFF:  Good morning.

18                      MR. CONTE:  Good morning, your Honor.

19                      Thomas Conte for Spencer Brewery and St. Joseph's

10:17:20AM 20   Abbey, along with Alexandra Mansfield.

21                      THE COURT:  Good morning.

22                      MR. DUDA:  James Duda for the misnamed parties, Cup of

23      Julie Show and Big Eastern Exposition.  We're actually

24      representing Eastern States Exposition.

10:17:37AM 25           And this is Lauren Ostberg, who's with me, also
</pre>

4

1    representing the same parties.

2            THE COURT:  All right.  Good morning.

3            MR. DUDA:  Good morning.

4            THE COURT:  Okay.  In no particular order, let's start

10:18:04AM 5    with -- actually, let's start with the joint motion, and this

6    is going to be in case 40011, and it's the joint motion of the

7    defendants, the Spencer Brewery, St. Joseph's Abbey, and the

8    eastern states expedition -- exposition, rather, to

9    consolidate.

10:18:40AM 10           Who has got that?

11           (Pause.)

12           THE COURT:  Mr. Conte, I think you're on this one.

13           MR. CONTE:  Your Honor, I think that's my motion.

14    Thank you.

10:18:51AM 15           Your Honor, we believe that all of these cases arise

16    from the same transaction and occurrence, and that is the

17    plaintiff did work for Spencer Brewery and St. Joseph's Abbey

18    under a purchase order back in 2016 in which she produced

19    certain panels and so-called clings for -- for an exposition

10:19:27AM 20    for Spencer Brewery and St. Joseph's Abbey at what is called

21    the Big E.  And as a result, all of these cases, the same

22    transaction and occurrence, the same contract, all of the facts

23    arise from that initial relationship, that purchase order, and

24    as a result these matters should be consolidated.

10:19:55AM 25           THE COURT:  Ms. -- Ms. Foss, what do you say?

1    THE PLAINTIFF:  I agree.

2    THE COURT:  Okay.  That's granted.

3    So that means we're consolidating 40011, 400 -- I'm

4 sorry -- 40125.

10:20:15AM 5    And, Mr. Conte, to the extent that I grant the relief

6 that Ms. Foss has requested on the dismissed case, which I

7 believe is 40010, would that be included in your motion?

8    MR. CONTE:  It -- if you were to grant her requested

9 relief, I'd defer to my -- my brother on that, but I believe so

10:20:51AM 10 because again it arises from the same transaction or

11 occurrence.

12    THE COURT:  It's not ripe yet, but -- the motion to

13 reopen is not ripe, but if I grant it your -- you have no

14 objection?

10:21:03AM 15    MR. CONTE:  I have no objection to consolidation.

16    THE COURT:  To consolidation.

17    Mr. Duda, what do you say?

18    MR. DUDA:  Your Honor, with some embarrassment, I have

19 to say I'm unaware of a motion to reopen.

10:21:16AM 20    THE COURT:  I've got it docketed October 19th.  Yeah,

21 it is a different case.

22    MR. DUDA:  Okay.

23    THE COURT:  I'm not even sure you're named in it.

24    THE PLAINTIFF:  No, I think it might be a different

10:21:29AM 25 defendant.

1          THE COURT:  Brady-Built Sunrooms, Foss --

2          THE PLAINTIFF:  No, that's not this case.

3          MR. DUDA:  Okay.  Then I have no objection, your

4   Honor.

10:21:33AM 5          THE COURT:  All right.  So, Ms. Foss, what's the

6   situation -- not -- not the motion to reopen, because they

7   haven't filed -- they have some time yet to file the

8   opposition.

9          Is that part of this?

10:21:47AM 10          THE PLAINTIFF:  (Nods negatively.)

11          THE COURT:  It's not at all?

12          THE PLAINTIFF:  Not at all.

13          THE COURT:  All right.  Okay.  So the motion to

14   consolidate is granted at least right now as to 4011 [sic] and

10:21:58AM 15   40125.

16          How about 40122?

17          THE PLAINTIFF:  That was the -- that was the state

18   Superior Court case that I had filed.  So initially, I had --

19          THE COURT:  You've got to stand up when you speak.

10:22:21AM 20          THE PLAINTIFF:  I'm sorry.

21          THE COURT:  That's all right.

22          THE PLAINTIFF:  Initially, I had come to this Court

23   with the initial 4011 case, which, you know, I'm still learning

24   how to write claims and all that stuff, so I understand

10:22:32AM 25   they -- the -- the Big Eastern got dismissed out of that case,

1    and then I decided to go to state court and to try to go under

2    93A and go that way, and I motioned for injunctive relief with

3    the Superior Court, and then we had a trial date set, and then

4    Attorney Conte had a death of one of his partners so he asked

10:22:57AM 5    for a continuance; and during the time of the continuance, he

6    motioned to remove the case to federal court.  And when I

7    showed up to the following hearing in Worcester Superior Court

8    for the motion for injunctive relief, it was canceled.

9         THE COURT:  Okay.  Is there -- Mr. Conte, was your

10:23:20AM 10   motion -- did your motion also include 40122?

11        MR. CONTE:  It -- it did not, your Honor; however, if

12   I may explain.  My understanding is that's the case that was

13   removed by what's -- what's titled as the Big Eastern without

14   the other defendants.

10:23:40AM 15        THE COURT:  Uh-huh.

16        MR. CONTE:  So it's duplicative of '125.  So '122

17   could be dismissed because it's already covered by '125.  Those

18   are duplicative actions.

19        THE COURT:  Do you agree?

10:23:56AM 20        THE PLAINTIFF:  Yes.  I think so.

21        THE COURT:  Okay.  So Docket No. 40122 is dismissed at

22   the request of the plaintiff with the consent of the

23   defendants.

24        All right.  While you are standing, Ms. Foss, how

10:24:15AM 25   about your motion for injunctive relief, talk to me about that,

1    please.

2         THE PLAINTIFF:  I was hoping to go to arbitration to

3    settle this out of the court and just settle it, you know,

4    quickly and privately through arbitration.

10:24:31AM 5         THE COURT:  Uh-huh.

6         THE PLAINTIFF:  As per our -- my contract that was

7    signed with the Spencer Brewery, it was for the dispute

8    resolutions for any, you know, matter for copyright, for any

9    dispute on the artwork, you know, over small claims

10:24:46AM 10    jurisdiction, so I just thought it would, you know -- you know,

11    as a signed contract, I thought we would have been in

12    arbitration a long time ago, but they refused.  I attempted to

13    get them into arbitration a year and a half ago, and they

14    refused and haven't spoken to me so...

10:25:04AM 15         THE COURT:  Okay.  So I'm going to come back to you on

16    this but -- and, as you know, I'm sure there's a difference

17    between arbitration and mediation.

18         THE PLAINTIFF:  Yes.

19         THE COURT:  Arbitration is more of a compulsory

10:25:18AM 20    process.  Mediation is not.

21         THE PLAINTIFF:  Correct.

22         THE COURT:  Are -- setting aside the arbitration, and

23    I'll hear from your opponents on that one, do you have any

24    interest in mediation?

10:25:31AM 25         THE PLAINTIFF:  No, strictly arbitration.

1          THE COURT:  You don't think mediation would be of --

2          THE PLAINTIFF:  I don't think it's the path I'm

3     supposed to take because I really stick to the standards of the

4     Artists Guild, the Graphic Artist Guild, and they recommend

10:25:47AM 5     arbitration.  So I don't -- I don't think mediation works for

6     us.

7          THE COURT:  Arbitration is -- we'll see how this

8     shakes out.  An arbitration is part of the process, and that

9     would mean that this case would be either dismissed or -- or

10:26:02AM 10    stayed while you went to arbitration, which is a very expensive

11    process, I might add; however, mediation is an attempt to get

12    you all into a room to try to resolve your difficulties.

13    Now --

14         THE PLAINTIFF:  But is it binding --

10:26:17AM 15         THE COURT:  No, it's not.

16         THE PLAINTIFF:  -- because I know that -- that's what

17    I'm saying, I think the arbitration would be binding.

18         THE COURT:  Well, mediation is an attempt to settle

19    the case.

10:26:24AM 20         THE PLAINTIFF:  Correct.  And then I would have to --

21         THE COURT:  Let me -- let me finish, okay?  One of the

22    beauties of this job is people, unlike at my home, don't get to

23    interrupt me.

24         So the thing about mediation is if you agree to a

10:26:37AM 25    settlement it's binding.

1          THE PLAINTIFF:  Okay.

2          THE COURT:  And everybody's in the room, and there is

3    either you use a private mediator, or we have magistrate judges

4    who have a 70 percent settlement rate.

10:26:50AM 5          Now, I'm not going to send you or them to mediation

6    unless everybody wants to go because I'm not going to waste the

7    judge's time, but it is a process where there's nothing --

8    nothing that happens in that process is told to me.  It is

9    you're totally candid with each other.  You meet with the

10:27:09AM 10   magistrate judge, and then you meet with each other, and it's

11   just a process.  It's a -- it's an attempt to resolve the case.

12   You don't have to go, and I don't -- won't think anything bad

13   about you or your case if you chose not to, but I do have an

14   obligation to let you know that it is available, okay?

10:27:27AM 15         THE PLAINTIFF:  Uh-huh.

16         THE COURT:  So you don't have to make a decision now.

17   I'm going to come back to you later in the morning about that

18   though, okay?

19         THE PLAINTIFF:  Okay.

10:27:34AM 20         THE COURT:  All right.  Who's opposition to the motion

21   for injunctive relief?

22         MR. CONTE:  Me, again, your Honor.

23         Your Honor, plaintiff cannot meet her burden to

24   establish a reasonable likelihood of success on the merits or

10:27:49AM 25   that she suffered irreparable harm, and as such her motion

1    should be denied.

2           As I said earlier, this case arises from a purchase

3    order.  Your Honor, that purchase order, which is quoted on

4    page 3 of my opposition, which is supported by the affidavit of

10:28:10AM 5    Father Isaac Keeley, who entered into this agreement with

6    plaintiff.  It says, "Copyright release:  All panels purchased

7    will remain the property of St. Joseph's Abbey" and plaintiff

8    "grants permission for continued reuse until a reprint or

9    changes to the art is needed."

10:28:29AM 10           There -- there is -- it's undisputed, your Honor,

11    this -- she doesn't -- she doesn't own the rights.  She -- she

12    released them.  Even if she had a copyright, she released them.

13    It's owned by St. Joseph's Abbey, and as a result she can't

14    meet her burden on success on the merits.

10:28:49AM 15           With respect to irreparable harm, her remedy is -- is

16    here at law.  If she could succeed on her case, she would be

17    entitled to money damages by definition.  That means she has

18    not suffered irreparable harm.

19           Thank you.

10:29:06AM 20           THE COURT:  Ms. Foss, I'll give you the last word on

21    that.  Tell me about that release.

22           THE PLAINTIFF:  Sure.  I sent them a limited release

23    for the print reproduction only and to be displayed only in the

24    booth.

10:29:18AM 25           THE COURT:  The language of the release appears to be

1    more general than the --

2        THE PLAINTIFF:  Because they -- all right.  So during

3    the meeting they had, they request -- I said to them I would

4    like to charge annually for the copyrights to display only.  No

10:29:34AM 5    other rights, no other media rights were discussed.  They said

6    they weren't doing any more advertising.  So I wrote a very

7    strict limited contract with them.

8        The unlimited portion of the print display in the

9    booth came from our discussion because the Spencer Brewery

10:29:53AM 10   didn't know if they were going to continue using the booth,

11   using the graphics doing the show at the Big Eastern.  So I

12   said to them, well, I'd like to charge for every year that you

13   do the display, and they said, well, we don't want to pay every

14   year because we don't know if we're going to be doing it every

10:30:08AM 15   year yet.  And then I said -- they said can you make the print

16   a little bit more expensive so that we don't have to pay to use

17   the print again.  And I agreed to that.  And that's why I wrote

18   the license.  So it was only for the print.  It wasn't all -- I

19   didn't release all the rights to my artwork.

10:30:22AM 20       THE COURT:  Thank you.

21       MR. DUDA:  Your Honor, if I may.  I just would like to

22   point out that Eastern States Exposition also filed an

23   opposition in the matter.

24       THE COURT:  Oh, I'm sorry.  Go ahead, Mr. Duda.

10:30:34AM 25       MR. DUDA:  I don't have much more to add than

1    Mr. Conte other than pointing out this is labeled a motion for

2    injunction.  We're assuming that what it actually is is a

3    motion for preliminary injunction since she's asking for

4    injunctive relief in the complaint itself.

10:30:48AM 5        To the extent this is a motion for preliminary

6    injunction, she hasn't shown any irreparable harm, if any harm

7    at all, and certainly she hasn't shown a likelihood on the

8    merits.

9         THE COURT:  And I'm going to ask Mr. Conte the same

10:31:01AM 10   question:  What's the -- your client's position about the fact

11   that the agreement appears to contemplate arbitration?  And as

12   we all have been learning lately, our appellate courts and the

13   Supreme Court have yet to see an arbitration case they didn't

14   like.

10:31:17AM 15        MR. DUDA:  Yes, your Honor, but we're -- we are not

16   party to any contract with the plaintiff.  We're in here

17   strictly on a copyright claim.

18        THE COURT:  Okay.

19        MR. DUDA:  So we are not -- we're not bound by that

10:31:27AM 20   provision.

21        THE COURT:  So it's only the brewery?

22        MR. DUDA:  It's only the brewery, yes.

23        THE COURT:  Thank you.

24        So, Mr. Conte, I guess that question is to you.

10:31:35AM 25        MR. CONTE:  Your Honor, the -- the plaintiff has never

                1    submitted a demand for arbitration of which I am aware.  She

                2    has --

                3              THE COURT:  I think the complaint itself is --

                4              MR. CONTE:  Your Honor, I think what she has done

10:31:48AM  5    is --

                6              THE COURT:  It sounds as a complaint for arbitration.

                7              MR. CONTE:  I understand that, your Honor, but she has

                8    filed multiple litigations, multiple lawsuits over the course

                9    of, I believe, now over a year; and by doing so she has waived

10:32:07AM 10    her rights to arbitration.  She has submitted herself to the

               11    jurisdiction of both the Superior Court and now the federal

               12    courts, and I -- I believe that she has waived under the case

               13    law.

               14              THE COURT:  Well, the -- and I -- there -- there may

10:32:27AM 15    be -- there may be some merit to that.  I spent most of the

               16    morning trying to sort out the -- what I appear to have four

               17    different cases going here, but at least with respect to docket

               18    40011, the plaintiff's petition is for arbitration.  I mean,

               19    that seems to me to be a clear request that the matter be

10:32:52AM 20    decided as to where it's going.

               21              MR. CONTE:  But -- but, your Honor, I -- I guess what

               22    I would point out.  I understand the Court's point, but I'd

               23    also point out that the arbitration provision is through AAA.

               24    It's -- it's not through court-appointed arbitrators.

10:33:13AM 25              THE COURT:  I understand.

1       MR. CONTE:  And she has never made a demand through

2  AAA for arbitration over these -- you know, this -- this

3  purchase order, and this work was done back in 2016.

4       THE COURT:  Thank you.

10:33:27AM 5       MR. CONTE:  Thank you.

6       THE COURT:  All right.  Let's go to docket 18-40125.

7       And how about Eastern State's motion to dismiss.  And

8  that would be document No. 8.

9       MR. DUDA:  Yes, your Honor, the -- as you may recall,

10:33:52AM 10  the Court has already addressed the issue that we've raised in

11  our motion to dismiss, which is the -- whether this Court even

12  has jurisdiction to hear a copyright claim against Eastern

13  States at -- certainly at that point.

14       We basically reiterated the arguments that we made

10:34:11AM 15  before, which when we made our prior motion to dismiss it was

16  granted.  We don't see anything different in this motion.  She

17  does claim to have filed a copyright application.  The -- the

18  title on the copyright application is not the -- it's not the

19  items that are listed in the complaint.  There's no correlation

10:34:34AM 20  there.  So I still -- I mean, it's a simple matter in that

21  motion itself without waiving any other arguments, of course,

22  your Honor, but simply that this Court should not be hearing a

23  copyright claim against Eastern States on this particular

24  matter.

10:34:47AM 25       THE COURT:  Thank you.

16

1           Ms. Foss, what do you say about that?

2           THE PLAINTIFF:  I disagree.  They are the end users of

3    my work in this particular video that is in question.  They

4    modified the work, which is the infringement, and they made an

10:35:03AM 5    unauthorized derivative of my work into video, from print now

6    into video, which is the modification.  So they are liable for

7    the copyright infringement because there was notice on the

8    panels, on the back of the panels.  The Spencer Brewery had

9    notice that it was copyrighted artwork, and they should have at

10:35:28AM 10    least done their due diligence to find out if credit or payment

11    was needed to use the art or modify the art.

12           THE COURT:  What's their -- and I'm not asking this

13    rhetorically, I don't know the answer -- what is their

14    obligation to do due diligence?

10:35:47AM 15           THE PLAINTIFF:  Well, in using copyrighted artwork,

16    the due diligence would be to find the owner of the artwork,

17    specifically if you're going to use it in your -- in any way

18    for a profit.  So if they're using it commercially in any way,

19    any company to use any artwork to profit from someone else's

10:36:09AM 20    artwork should find the owner and the art -- you know, seek the

21    permission of the artist and usually negotiate the -- the

22    copyright, the value of the copyright.

23           THE COURT:  Do you have any cases or statutory

24    citations to support that?  I'm not arguing with you.  It seems

10:36:29AM 25    to make sense, but --

1          THE PLAINTIFF:  Yeah, it's -- it's --

2          THE COURT:  -- do you have any authority for that?

3          THE PLAINTIFF:  I don't offhand, but I can research

4     maybe something, some kind of case for that, but I mean it's

10:36:40AM 5     kind of, like, how to avoid copyright infringement lawsuits is

6     you, you know, get permission, you get a release from the

7     artist to use the work.  And you usually pay a royalty or a

8     commission or an image fee, you know, they needed permission to

9     make the derivative; they needed permission to make the

10:37:02AM 10    performance.

11         THE COURT:  So is -- as I understand this, the Abbey

12    had a booth that had the copyrighted art that was at the -- the

13    Eastern States Exposition?

14         THE PLAINTIFF:  Correct.  And it was limited --

10:37:23AM 15         THE COURT:  So it would be incumbent upon Eastern

16    States to go to every one of those booths to make sure that the

17    displays were properly copyrighted?

18         THE PLAINTIFF:  It depends on the artwork.  If the

19    artwork is, in fact, copyrightable or not.  And then it

10:37:41AM 20    also -- it was really the -- the duty of the Spencer Brewery to

21    notify everybody in the room that the graphics were

22    copyrighted.

23         THE COURT:  Well, that certainly -- that I under -- I

24    understand that the Spencer Brewery had an obligation.  I'm

10:38:03AM 25    just trying to determine what the -- the role of the --

1    THE PLAINTIFF:  The end user, yeah, it really falls on

2    the --

3    THE COURT:  They weren't the end user.  They were sort

4    of the location where the artwork was --

10:38:15AM 5    THE PLAINTIFF:  Right.

6    THE COURT:  -- placed.

7    THE PLAINTIFF:  So there's two different things.  So,

8    like, there's the doctrine of fair use.  So, like, if the

9    artwork was outside, and it was in the public area, like, say

10:38:27AM 10    if it was on a billboard and somebody took a, you know, a

11    commercial with the artwork on the billboard in the background,

12    and they were in the street filming a commercial that would be

13    considered fair use.  It would be something not really what the

14    video or the commercial would be about, but in this case the

10:38:45AM 15    artwork was featured in the background of the video, which was

16    inside the booth, which was an extra ticketed area inside the

17    booth.  It was strictly, you know, copy written release only to

18    use by the Spencer Brewery, and I had even asked Spencer

19    Brewery to put a copyright notice on their video presentation

10:39:08AM 20    at the end, which I don't have proof of whether they did or

21    didn't.  So I -- I don't know if the Big Eastern knew, you

22    know, that the work was copyrighted.  I don't know if the

23    Spencer Brewery told them.  Do you know what I mean?  So -- and

24    I'm sure that they didn't because the Spencer Brewery didn't

10:39:23AM 25    even mention me in the video, and I'm not sure if they even put

1    the notice at the end of their video presentation because my

2    copyright notice was on the back of the panels because I didn't

3    want to put it on the front and ruin the artwork.

4              THE COURT:  Thank you.  All right.

10:39:38AM 5         MR. DUDA:  Your Honor, could I just briefly respond?

6              THE COURT:  Sure.

7              MR. DUDA:  I just want to make clear in my initial

8    response to your question, I was addressing only our motion to

9    dismiss, which is based purely on the issue of jurisdiction.

10:39:50AM 10   And I wasn't getting into the merits.  To the extent that you

11   would like a discussion on the merits of the copyright issue,

12   we could talk about that, but our motion is based simply on the

13   fact that in order for Ms. Foss to be in this court on a

14   copyright claim she's supposed to have registered the work at

10:40:05AM 15   issue with the U.S. Copyright Office.

16             So far as we know, she has not done so.  The only

17   reference to an application is a different work.  At least it's

18   not the work that's named in the complaint.  We don't know what

19   work she's talking about, and it kind of goes right to the

10:40:19AM 20   heart of the reason why there is a requirement for registering

21   work prior to when you go into court so the party can be on

22   notice on what the heck -- what the work is that is being

23   identified and for which copyright infringement is being

24   claimed.  So we just had this initial issue.  We think -- there

10:40:37AM 25   should not be any -- Big Eastern shouldn't here in the first

1    place because the Court doesn't have jurisdiction over its

2    claim because she's asserting a violation of a copyright that

3    so far as she has shown so far is not registered and -- and we

4    should just be out on that basis.

10:40:54AM 5        THE COURT:  Thank you.

6            Actually, that reminded me.  I had actually made a

7    note to ask you.  What is the situation with that registration,

8    please?

9            THE PLAINTIFF:  I received the registration.  I have

10:41:04AM 10   the registration.  I actually printed out the, you know, public

11   notice from the copyright website, and I included it in my

12   motion to oppose their dismissal, which I filed yesterday.  So

13   I don't know if you received it.

14           THE COURT:  I did.

10:41:22AM 15       THE PLAINTIFF:  Yeah, so I have the registration.  I

16   registered the work.

17           THE COURT:  And when did you register it, please?

18           THE PLAINTIFF:  April 19th of 2017.

19           THE COURT:  And when was the alleged infringement,

10:41:32AM 20   please?

21           THE PLAINTIFF:  The alleged infringement was

22   September 29th of 2016.

23           THE COURT:  Thank you.

24           Mr. Duda, what's the -- what's the -- what's your

10:41:47AM 25   position -- does the registration -- and I'm going to ask

1    Ms. Foss the same question -- does the registration -- does the

2    copyright have to be registered at the time it is used or is

3    that just a requirement?

4         MR. DUDA:  No, your Honor, what -- if what Ms. Foss is

10:42:07AM 5    saying is correct, and I want to address that separately, but

6    just to answer your question first.  The way the law is

7    structured is that copyright comes into being at the moment of

8    creation.  If she fails to register the copyright prior to

9    infringement, she losses any ability to get attorneys' fees or

10:42:29AM 10    statutory damages under the law, which she can't receive with

11    respect to actual damages or real gotten profits.

12         Our issue, even on the registration, and what she has

13    shown in her application is that she has presented, at least in

14    the -- I haven't seen any registration.  So that's news here,

10:42:46AM 15    but the application names a work.  I don't remember what the

16    name of it is, which is a different name for a work than what

17    she claims in the complaint.

18         So simply having a registration for a work doesn't

19    give her jurisdiction to bring a copyright infringement action

10:43:03AM 20    for any work that she has done; otherwise, it has to be work

21    that she has registered.  And again, your Honor, it kind of

22    gets to the point of notice and why the registration

23    requirement is there before you get into federal court so that

24    the defendant can at least be put on notice as to what the work

10:43:17AM 25    is, and we don't have that, and we did not have that prior to

1    the filing of the complaint.

2            THE COURT:  Ms. Foss, do you want to add anything to

3    that?

4            THE PLAINTIFF:  Yes, please.

10:43:27AM 5        THE COURT:  Please.

6            THE PLAINTIFF:  The room consisted of three walls of

7    copyrighted graphics that I produced.  The long wall in the

8    back --

9            THE COURT:  Were all three works separately

10:43:38AM 10   copyrighted or was it --

11           THE PLAINTIFF:  Well, I did a group registration for

12   the five -- there's about -- it consisted of about five

13   different pieces in the room.  So I put them all for one group

14   registration so I just kind of registered the whole room

10:43:52AM 15  together.

16           So the piece that they infringed on in the video is

17   called the long wall just to make it a short statement, but,

18   your Honor, I referred to it as the refectory long wall, the

19   stained glass wall.  It was the photos and the graphic

10:44:08AM 20  composition that I manipulated to make in likeness of the St.

21   Abbey's refectory interior.  So it was about a 256-foot long

22   graphic by six foot tall, and it was the stained glass windows,

23   which I had taken a couple of different photos to make because

24   you could not even capture the beauty of the stained glass with

10:44:31AM 25  the beauty of the brick around it in one photo.  So I actually

23

1    took two photos to make it look like one photo, to make it look

2    like you were standing in the room.  So that was the piece in

3    question that they used in the back of the video.  They

4    both -- they, you know, they filmed it several times in

10:44:49AM  5    different pieces in different locations because it was

6    256 inches long.

7            So, you know, part of the interview they had him

8    sitting in the middle of the graphic.  In part of the interview

9    they panned off and took the camera right on to the stained

10:45:04AM 10    glass windows, and, you know, they commented about the artwork

11    and then, you know, I was never mentioned in any of the video

12    as the artist, which they didn't give me the opportunity to do

13    because they never notified me up front that they were even

14    making a video.  So I would have appreciated a credit, and I

10:45:22AM 15    would have appreciated, you know, my business name out there

16    just like anybody else looking for work.

17            THE COURT:  Thank you.

18            All right.  So it looks like the only things I have

19    left are the plaintiff's motion for discovery on several of the

10:45:39AM 20    cases; and on those, Ms. Foss, I'm going to reserve on those

21    until I decide the motions to dismiss.  That's just the way the

22    rules work.  If I'm going to dismiss the case there's no sense

23    in doing discovery; and if I don't dismiss the case, then we're

24    going to do discovery.

10:45:58AM 25            So let me ask.  I saw the -- you all have submitted a

1   joint statement, and anybody want to talk to me further about

2   it?

3           MR. CONTE:  Sure, your Honor.

4           Your Honor, what we're proposing is -- it's a good

10:46:22AM 5   segue that you decide the pending motions with your permission

6   prior to us embarking on discovery.  That's -- that's the first

7   point in paragraph two of the events.

8           And then, secondly, we would like the opportunity,

9   Spencer Brewery and St. Joseph's Abbey, to either file a motion

10:46:45AM 10   for judgment on the pleadings and/or summary judgment for the

11   reasons that have already been articulated prior to embarking

12   on costly and disproportional discovery.

13           THE COURT:  What is the defendant's position with

14   respect to mediation at this point?

10:47:09AM 15           It seems to me like it would be a good idea.

16           MR. CONTE:  Your Honor, we would be happy to try to

17   resolve this case.  The problem is -- and without casting

18   aspersions, it's expectations.  It's -- it's -- I just don't

19   think the -- the expectations are aligned with a case of this

10:47:34AM 20   nature.  I mean, there are -- you know, this was not done for

21   an awful lot of money, and I think the expectations are just

22   again very, very unrealistic.

23           All that said, we would be happy to try to mediate

24   with Magistrate Hennessy in good faith.

10:47:56AM 25           THE COURT:  Mr. Duda.

1        MR. DUDA:  Yes, your Honor, I agree with Mr. Conte.  I

2   mean, I think Big Eastern or Eastern States Exposition sees

3   this as very much of a nuisance action.  It would like to end

4   it as soon and as quickly as possible.

10:48:14AM 5        And mediation, personally, I always think is a good

6   idea.  So I -- we would be open for that idea, your Honor.

7        THE COURT:  So, Ms. Foss, it's up to you, if you would

8   like, I can refer it, and there is no obligation to --

9   to -- you don't have to go, and I won't think anything bad

10:48:36AM 10  about you or your case.

11       The magistrate judges in this district have a

12  70 percent settlement rate.  Anything that happens in the

13  mediation is confidential.  They don't share it with me.  They

14  won't even tell me what the numbers are that you guys are

10:48:57AM 15  tossing around because I don't really care.  It's up to you.

16       Is that something you'd be interested in?

17       THE PLAINTIFF:  Sure.

18       THE COURT:  Okay.  All right.  Good.  Good.  It really

19  is -- I think that's a wise choice.  The worst thing that's

10:49:17AM 20  going to happen is you're going to just keep trying the case;

21  and the best thing is you may resolve it, which is in

22  everybody's interests, believe me.

23       THE PLAINTIFF:  Correct.

24       THE COURT:  Okay.  So I think what I'm going to do is

10:49:30AM 25  we're going to refer it for mediation; and then depending on

26

1       how that works out, I will deal with these motions.  Okay?

2              All right.  Anything further I can do to assist your

3       efforts?

4              Anything further I can do to assist your efforts?

10:49:46AM 5              MR. CONTE:  Just, your Honor, I just want to clarify.

6       Initial disclosures, are we to assume that all of that is

7       suspended at this point in time?

8              THE COURT:  Do you need them?

9              MR. CONTE:  We prefer not -- we prefer not to have to

10:50:01AM 10       embark on them at this point.

11             THE COURT:  All right.  Then let's hold it up.

12             MR. CONTE:  Thank you.

13             THE COURT:  Okay.  Are you good with that?

14             THE PLAINTIFF: Correct.  Yeah.

10:50:08AM 15             THE COURT:  All right.

16             MR. DUDA:  With that, your Honor, all set.  Thank you.

17             THE COURT:  All right.  Have a safe home everybody.

18             THE PLAINTIFF:  Thank you.

19             MR. DUDA:  Thank you very much, your Honor.

10:50:16AM 20             MR. CONTE:  Thank you, your Honor.

21             (At 10:50 a.m., Court was adjourned.)

22

23

24

25

1                       C E R T I F I C A T E

2

3            I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript is a true and accurate

5    transcription of my stenographic notes before the Honorable

6    Timothy S. Hillman, to the best of my skill, knowledge, and

7    ability.

8

9

10       /s/ Marianne Kusa-Ryll                    1/7/2020

11       Marianne Kusa-Ryll, RDR, CRR              Date

12       Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25